**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 28, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1136-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2021CF87

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

     PLAINTIFF-RESPONDENT,

 V.

RAYMOND R. LEWIS,

     DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for La Crosse County: ELLIOTT M. LEVINE, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Raymond Lewis appeals a judgment of conviction for possession of cocaine with intent to deliver.  Lewis argues that the circuit court

erred by denying his motion to suppress evidence based on a challenge to the search warrant for Lewis's apartment. Specifically, Lewis argues that the affidavit submitted in support of the search warrant did not establish probable cause for the search and that the warrant did not describe the place or places to be searched with sufficient particularity. For the reasons explained in this opinion, we reject Lewis's constitutional challenges to the search warrant. Accordingly, we affirm.

*Background*

¶2    On January 25, 2021, local police submitted to the circuit court an affidavit in support of a proposed warrant authorizing a search of an apartment unit located within a three-story, multi-unit building in La Crosse, as well as searches of two vehicles. Most pertinent here were references to the apartment. It was described as having an exterior door that directly accessed Cass Street and that displayed the street number 809 ("809 Cass Street" or "the apartment"). The affidavit contained averments offered to support findings that Lewis resided in the apartment with Aubrey Marshall and Christina Joswick and that evidence related to distribution of cocaine and other controlled substances would be found in the apartment. Relevant averments included the following.

¶3    Police had conducted two controlled buys of cocaine base from Marshall, on January 18, 2021, and January 25, 2021, providing him with a total of $3,000 in "buy money" through a confidential informant. The informant involved in the controlled buys told police that over the previous month she had purchased cocaine from Marshall about fifteen times.

¶4    Immediately after the January 18 controlled buy, Marshall parked his car on the 800 block of Cass Street and used a key to enter 809 Cass Street. Prior to the January 25 controlled buy, Marshall walked out of 809 Cass Street,

2

used a vehicle registered to Joswick to drive to the target location, and made contact with the informant. After the controlled buy, Marshall returned to 809 Cass Street and again used a key to enter the apartment.

¶5 Police observed Marshall coming and going from 809 Cass Street on other occasions and also observed that his car was parked near there on multiple days between December 2020 and January 2021, including over the course of two nights, from January 18, 2021, to January 20, 2021.

¶6 Police also observed Lewis and Joswick coming and going from 809 Cass Street numerous times in December 2020 and January 2021 and were aware that both received mail at that address.

¶7 Lewis was on bond from a pending 2017 La Crosse drug case in which he was charged with: delivery of methamphetamine and cocaine salt; maintaining a drug trafficking residence; possession of cocaine salt, heroin, and methamphetamine with intent to deliver; possession of marijuana; possession of a firearm by a felon; and possession of drug paraphernalia. Further, Lewis had been arrested on November 18, 2020, on charges of possession of methamphetamine, cocaine, and drug paraphernalia. During the police contact resulting in the November arrest, Lewis was suspected of opening bags of drugs and throwing them out a car window.

¶8 The officer who submitted the affidavit averred that, based on his training and experience, he was aware that drug traffickers commonly store drugs in their residences.

¶9     The circuit court issued the requested search warrant.   Police executed it and found controlled substances in the apartment, including in a bedroom shared by Lewis and Joswick, leading to the charges in this case.

¶10     Lewis moved to suppress the evidence obtained during the search, arguing that the search warrant was unsupported by probable cause to search the apartment and that the warrant was overbroad in authorizing a search of the bedroom shared by Lewis and Joswick.

¶11     Following a suppression hearing, the circuit court ruled that the search warrant was valid and it denied Lewis's motion to suppress the evidence obtained from his apartment.  Lewis pleaded no contest to one count of possession of cocaine with intent to deliver and a judgment of conviction was entered.  Lewis appeals the order denying his suppression motion.[1]

*Discussion*

¶12     The Fourth Amendment requires that a search warrant must be supported by probable cause and must particularly describe the place or places to be searched.  *State v. Gralinski*, 2007 WI App 233, ¶¶14-15, 306 Wis. 2d 101, 743 N.W.2d 448; WIS. STAT. § 968.12(1).

---

[1] *See* WIS. STAT. § 971.31(10) ("An order denying a motion to suppress evidence ... may be reviewed upon appeal from a final judgment or order notwithstanding the fact that the judgment or order was entered upon a plea of guilty or no contest to the information or criminal complaint.").

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶13    To satisfy the Fourth Amendment's probable cause requirement, the magistrate who issues the warrant must be "apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched." *State v. Starke*, 81 Wis. 2d 399, 408, 260 N.W.2d 739 (1978). The magistrate may draw reasonable inferences from the evidence presented in the affidavit. *See State v. Benoit*, 83 Wis. 2d 389, 399, 265 N.W.2d 298 (1978). "The defendant bears the burden of proving insufficient probable cause when challenging a search warrant." *State v. Jones*, 2002 WI App 196, ¶11, 257 Wis. 2d 319, 651 N.W.2d 305. "Although we accord deference to the warrant-issuing court's probable cause determination, whether the language of the search warrant meets constitutional requirements for reasonableness is a question of law and our review is de novo." *State v. Schaefer*, 2003 WI App 164, ¶24, 266 Wis. 2d 719, 668 N.W.2d 760.

¶14    To satisfy the Fourth Amendment's particularity requirement, "[a] warrant must sufficiently describe the place to be searched so that the officer 'can with reasonable effort ascertain and identify the place intended.'" *State v. Jackson*, 2008 WI App 109, ¶¶8-9, 313 Wis. 2d 162, 756 N.W.2d 623 (quoted source omitted). The interpretation of a warrant presents an issue of law that we review de novo. *See State v. Pinder*, 2018 WI 106, ¶24, 384 Wis. 2d 416, 919 N.W.2d 568.

¶15    Lewis contends that the search warrant affidavit was insufficient to establish probable cause to believe that evidence of drug distribution would be found at 809 Cass Street, including in the bedroom shared by Lewis and Joswick. He contends that the affidavit failed to establish a nexus between Marshall's alleged drug dealing and the apartment or, more specifically, a nexus to the

bedroom shared by Lewis and Joswick. He also contends that the warrant failed to meet the Fourth Amendment particularity requirements by failing to describe, with sufficient particularity, where within that apartment officers executing a search were likely to find evidence of drug distribution.

¶16 Lewis argues that the search warrant here is akin to the search warrants that we found unsupported by probable cause in *Jackson* and *State v. Sloan*, 2007 WI App 146, 303 Wis. 2d 438, 736 N.W.2d 189, and also akin to the warrant determined to be void in *United States v. Hinton*, 219 F.2d 324 (7th Cir. 1955). He further attempts to distinguish the affidavit and warrant here from those upheld by our supreme court in *State v. Ward*, 2000 WI 3, 231 Wis. 2d 723, 604 N.W.2d 517. We briefly summarize pertinent aspects of these opinions.

¶17 In *Jackson*, the challenged search warrant authorized execution of a search of an entire "two-story duplex residence"—that is, a search of both of two separate but physically attached residential units—for evidence that Jackson had committed the crime of felon in possession of a weapon. *Jackson*, 313 Wis. 2d 162, ¶2. We concluded that the affidavit was insufficient to establish probable cause because it alleged only that Jackson was observed with firearms at the residence bearing the address of the duplex building as a whole and that Jackson used that address as his home address. *Id.*, ¶¶19-24. We noted that the affidavit failed to aver "that Jackson had been observed using both of the two-story duplex units, or that" what appeared to be a two-story duplex was "actually a single[-] family residence." *Id.*, ¶19. We further noted that the affidavit did not contain "any particularized information" that "the crime of possessing a firearm was actually observed or identifying the unit in which Jackson actually resided," and that "'[a] warrant describing an entire building when cause is shown for searching

6

only one apartment is void.'" *Id.*, ¶21 (quoted source omitted). We observed more generally that,

> [w]hile a single warrant may identify different residences within a single building, still probable cause must be shown for searching *each* residence unless the information supporting the warrant provides probable cause to believe that although appearing to be a multi-unit building, the entire building is actually being used as a single unit.

*Id.*, ¶24 (emphasis in original). We interpret the court to use the phrase "residences within a single building" to mean "residential units within a single building."

¶18 Similarly, in **Hinton**, the Seventh Circuit held that a warrant was void because it authorized a search of an entire multi-unit building, including three floors and a basement, instead of identifying one or more residential units or other specific areas of the building. **Hinton**, 219 F.2d at 326.

¶19 In **Sloan**, police obtained a search warrant to search the Wisconsin residence identified as the return address, along with Sloan's name, on a package containing marijuana that Sloan deposited at a post office for delivery to himself at an address located out of state. **Sloan**, 303 Wis. 2d 438, ¶¶2-5. We determined that the search warrant affidavit "did not establish probable cause to believe a nexus existed between the items sought and the residence searched" because there were no averments that would connect the Wisconsin residence to be searched with Sloan's possession of marijuana at the post office when he deposited the marijuana for delivery out of state. *Id.*, ¶¶1, 29-38. "[C]ritical to our analysis" was the fact that the affidavit did not provide any reason to believe that "Sloan is, or has recently been, engaged in any criminal activity at" the Wisconsin residence. *Id.*, ¶31. Significantly, nothing in the affidavit suggested that Sloan, or that

anyone else associated with the Wisconsin residence, was involved in manufacturing or distributing drugs. *Id.*, ¶¶31-38.

¶20 In *Ward*, our supreme court concluded that the search warrant affidavit established probable cause to search Ward's residence because it was reasonable to infer from the allegations that Ward was a drug supplier and that evidence of the distribution of illegal drugs would be found in his residence. *Ward*, 231 Wis. 2d 723, ¶30. The supreme court specifically rejected the argument that probable cause to search the residence could not be established in the absence of an "explicit" averment "linking the illegal drugs to the Ward residence." *Id.*, ¶31. Rather, the court concluded, a sufficient nexus to support probable cause for a search of the residence was established based on the averment that a "high volume dealer" had identified Ward as his supplier. *Id.*, ¶34.

¶21 Lewis argues that here, as in *Jackson* and *Sloan*, the affidavit did not establish a nexus between the alleged illegal activity and the residence to be searched. In a similar vein, he contends that here, as in *Hinton*, the warrant failed to specify where, within what he describes as a multi-family dwelling, evidence of Marshall's alleged drug dealing would be found. He argues that the warrant failed to particularly identify where officers were likely to find contraband based on the affidavit's allegations, and therefore failed to meet the Fourth Amendment's particularity requirement. Because the affidavit did not allege any illegal activity inside the apartment or any facts that would link Marshall's alleged drug dealing to any specific area within the apartment, Lewis argues, the warrant was void. His position is that the affidavit needed to establish probable cause to search areas of the apartment over which Marshall had control as opposed to areas over which he lacked control. He argues that there were no averments indicating that Lewis even knew about, much less participated in, Marshall's alleged drug dealing, and that

even if there was reason to believe that Lewis resided with a drug dealer, this was insufficient to support probable cause for a search of his bedroom. He contends that here, unlike in *Ward*, no reasonable inferences would support probable cause to believe that contraband would be found in the apartment or in the bedroom that Lewis shared with Joswick.

¶22 In a related argument, Lewis contends that the search warrant was invalid because it failed to describe, with sufficient particularity, the "place to be searched so that the officer 'can with reasonable effort ascertain and identify the place intended.'" *See Jackson*, 2008 WI App 109, ¶8 (quoted source omitted). He argues that the warrant failed to satisfy the particularity requirement that a warrant identify the particular unit to be searched within what he asserts was a multi-family residence. *See id.*, ¶9. He contends that here, as in *Jackson*, the scope of the search authorized in the warrant—for the entire apartment—was not particular to the allegations in the affidavit.

¶23 We conclude that the averments in the affidavit here were sufficient to establish probable cause to search all areas within the apartment, including the bedroom shared by Lewis and Joswick.[2] Unlike in *Jackson*, the affidavit here included allegations of criminal activity tied to the particular apartment unit to be searched and did not seek authorization to search an entire multi-unit building without establishing any connection between the alleged illegal activity and any

---

[2] The State argues that Lewis forfeited the argument that the search warrant was overbroad by failing to develop that argument in his suppression motion. It also argues that even if the warrant was overbroad, suppression was inappropriate because the police relied on the warrant in good faith. Because we conclude that the warrant was not overbroad, we need not address forfeiture and we do not reach the State's good faith argument. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (appellate opinions should generally be resolved "on the narrowest possible ground").

individual apartment unit. And, unlike in *Sloan*, the affidavit included allegations that supported an inference that evidence of drug dealing would be found within the residence. Here, as in *Ward*, 231 Wis. 2d 723, ¶¶30, 34, the "obvious and reasonable inference" from the allegations as to the drug activity in connection with the residence was that evidence of drug dealing would be found there.

¶24 To recap, the affidavit alleged that Marshall sold $3,000 worth of cocaine to the informant in the two buys on January 18, 2021, and January 25, 2021, and that he had also sold cocaine to the informant about fifteen times over the past month. Those facts were sufficient to support the inference that Marshall is involved in recent drug dealing. Additionally, the allegations as to Marshall's comings and goings from 809 Cass Street supported the inference that Marshall resided there. Particularly notable were the allegations that Marshall left the apartment to go to one of the recent controlled buys, and returned there after both of them. This supported the inference that evidence of drug dealing—for example, drugs or the buy money—would be found at the apartment. That inference is also supported by the averment in the affidavit that drug dealers often store drugs in their residences. Accordingly, the affidavit alleged a sufficient nexus between Marshall's drug dealing and the apartment to support probable cause for the search.

¶25 Additionally, the affidavit alleged that Lewis had a prior drug conviction, that he had been arrested for possessing cocaine within the past two months, and that Marshall used Joswick's car for one of the drug buys. Those averments further supported the inference that evidence of drug dealing would be found at the residence shared by Marshall, Lewis, and Joswick. Further, it supported a reasonable inference that evidence of drug dealing would be found in the bedroom shared by Lewis and Joswick. *See id.* (explaining that "[t]he test is

not whether the inference drawn is the only reasonable inference. The test is whether the inference drawn is a reasonable one," and that when "there is evidence that would lead a reasonable person to conclude 'that the evidence sought is likely to be in a particular location,' there is probable cause for a search of that location, even if it may also be reasonable to conclude that the evidence may be in a second or third location as well" (quoted source omitted)).

¶26 We also conclude that the warrant met the Fourth Amendment's particularity requirement by specifying that the search was authorized for the apartment unit at 809 Cass Street. "The basic requirement is that the officers who are commanded to search be able from the 'particular' description of the search warrant to identify the specific place for which there is probable cause to believe that a crime is being committed." *Hinton*, 219 F.2d at 326. Here, the particular place to be searched based on probable cause was the apartment at 809 Cass Street, and that place was described with sufficient particularity in the warrant.

## CONCLUSION

¶27 For all of these reasons, we affirm the judgment of the circuit court.

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.